IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| THOMAS D. HAMILTON and MICHELLE HAMILTON, | ) ) ) | Case No. CV-07-141-N-BLW |
| Plaintiffs, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| ASSOCIATED INDEMNITY CORP., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant's Motion for Summary Judgment (Docket No. 13) and Plaintiffs' Cross Motion for Summary Judgment (Docket No. 20). The Court heard oral argument on the motion on March 4, 2008 and now issues the following decision.

## BACKGROUND

Thomas and Michelle Hamilton contracted for the construction of a new home along the Spokane River in Post Falls, Idaho. The House was built with numerous full-height windows facing Southwest toward the river. The windows are coated with a special reflective coating to reduce the solar glare and radiation

**Memorandum Decision and Order - 1**

entering the home and are tempered for safety purposes.

Prior to moving into the House, the Hamiltons purchased a homeowners' insurance policy from Associated Indemnity Corporation ("AIC"). The house was constructed in 2005. During construction, dust, plaster, paint, and other construction debris became adhered to the window surface. The Hamiltons hired Gary Kintner, who had been in the window cleaning business for eight years, to clean the windows.

Kintner discovered that the interior surface of the windows was covered with a gritty surface which resisted conventional cleaning methods using a cloth and squeegee. Mr. Kintner therefore used a razor scraper to remove the grit. This was done at a time of day where the sun was not shining directly on the windows. Shortly after the windows were cleaned, the Hamiltons noticed numerous fine scratches in the surface of the windows, which were only visible when exposed to direct sunlight.

The Hamiltons submitted a $257,172.40 claim for replacement of the damaged windows to AIC under the policy. In March 2006, AIC conducted an investigation and concluded that the damage to the widows occurred when Mr. Kintner cleaned them. AIC hired Henry Chamberlain, a glass expert, to determine the cause of the scratches. Mr. Chamberlain concluded that Mr. Kintner caused the

**Memorandum Decision and Order - 2**

scratches by scraping the windows with a razor tool.

On July 12, 2006, AIC issued the Hamiltons a letter denying coverage for the loss, stating that "the majority of all damages is scratching of the glass windows by the window washer, which is faulty, inadequate, or defective workmanship or maintenance." (See Hamilton Aff., Ex. 2; Umland Dec., Ex. L, p. 1). After the Hamiltons filed this lawsuit against AIC in February 2007, AIC issued the Hamiltons a second letter on March 14, 2007, citing a page of policy provisions, then concluding that "[d]amage due to faulty, inadequate or defective workmanship in repairs, construction, grading, or maintenance are expressly excluded by the policy of insurance." (Hamilton Aff., Ex. 3; Umland Dec., Ex. M, p. 2).

## ANALYSIS

## I.    Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of

**Memorandum Decision and Order - 3**

some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving

party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct

testimony of the non-movant must be believed, however implausible. *Leslie v.

Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is

not required to adopt unreasonable inferences from circumstantial evidence.

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that

apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and

convincing evidence, the issue on summary judgment is whether a reasonable jury

could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc). To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply

point out the absence of evidence to support the nonmoving party's case. *Fairbank*

**Memorandum Decision and Order - 4**

*v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## II.  Policy Coverage

The parties dispute whether the Hamiltons' claim is covered by the insurance policy. AIC contends that the policy does not cover damage caused by faulty, inadequate or defective maintenance.[1] The Hamiltons disagree, contending that the damage to their windows is not subject to this limitation in the policy.

### A.  Standard For Interpreting Insurance Contracts

Generally, Idaho courts construe insurance contracts in a light most favorable to the insured and in a manner which provides full coverage for the indicated risks rather than narrowing its protection. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.,* 115 P.3d 751, 754 (Idaho 2005). Nevertheless, "[i]n construing an insurance policy, the Court must look to the plain meaning of the

---

[1] AIC also contends that the policy specifically states that AIC will not pay for loss caused by or resulting from scratching. The Court need not address this argument because the faulty maintenance language is dispositive in this case.

**Memorandum Decision and Order - 5**

words to determine if there are any ambiguities." *Id.*  This determination is a question of law for the Court, and the Court must construe the insurance policy as a whole, not by isolated phrases.  *Id.*  Like other contracts, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations.  *Id.*

"The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred."  Clark v. Prudential Property and Cas. Ins. Co., 66 P.3d 242, 245 (Idaho 2003).  However, standardized contract language must necessarily be somewhat general, in anticipation of varying circumstances of the facts.  *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984).  "[W]here the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used."  *Cascade*, 115 P.3d at 754. (Internal citation and quotation omitted).

### B.  The Hamiltons' claim is specifically excluded by the faulty, inadequate or defective maintenance clause of the policy.

AIC contends that the policy does not cover the Hamiltons' claim because the policy clearly states that it does not cover losses caused by faulty, inadequate or defective maintenance.  In support of their argument, AIC references the following section of the policy:

B.     Property Losses Not Covered

**Memorandum Decision and Order - 6**

* * *

3.    We do not cover loss caused by any of the following.

           * * *

    c.    faulty, inadequate or defective:

              * * *

        (2)    design, specifications, workmanship, repair, construction, renovation, grading, compaction;

        (3)    materials used in repair, construction, renovation or remodeling; or

        (4)    maintenance

        of part or all of any property on or off the residence premises.

(Umland Dec., Ex. A, pp. 36-37).

AIC claims that Mr. Kintner's work on the windows falls within the faulty maintenance exception of the policy.  Citing *Allstate Insurance Co. v. Smith*, 929 F.2d 447, 449 (9th Cir. 1991), where the Ninth Circuit interpreted the phrase "faulty workmanship" in a similar insurance contract, the Hamiltons contend that "faulty, inadequate or defective maintenance" is susceptible to more than one interpretation, and that the Court should adopt an interpretation which favors coverage.  The Court disagrees.

In *Smith*, the plaintiff, Dr. Smith, rented space in a Los Angeles office building for his medical practice.  Subsequently, a roofing contractor working on

**Memorandum Decision and Order - 7**

the building removed most of the roof but did not put a temporary cover over the exposed premises at the end of his work day.  That night it rained, and Smith's office equipment and improvements were damaged.  Smith filed a claim with Allstate for the repair and replacement of his business property and for his lost earnings due to disruption of business.  Allstate argued that Smith's losses were not covered by his policy.  The district judge ruled that Allstate had no duty to reimburse Smith because his losses were caused by "faulty workmanship," an enumerated exception in his insurance policy.  Smith appealed and the Ninth Circuit reversed.  *Id*. at 448-49.

The Ninth Circuit concluded that "faulty workmanship" may be interpreted as (1) the flawed quality of a finished product, or (2) a flawed process. The court explained that failing to put a temporary cover over the exposed premises would not be "faulty workmanship" under the flawed finished product interpretation because that interpretation requires the presence of an object to evaluate, and the roofer had not completed any portion of the new roof when the damage occurred. Thus there was no object to evaluate to determine whether the workmanship was faulty.  *Id*. at 449.  However, under the flawed process interpretation, the Ninth Circuit concluded that failure to put a temporary cover on while replacing a roof may constitute "faulty workmanship."  *Id*.

Memorandum Decision and Order - 8

The court also considered the fact that there are at least two dictionary definitions of workmanship: (1) something effected, made, or produced: Work; and (2) the art or skill of a workman: Craftsmanship. *Id.* The court found that the first definition supports a finished product interpretation, while the second definition supports a process interpretation. *Id.*

Thus, the Court concluded that the faulty workmanship exclusion could be construed as applying to either a finished product or a process.   On the one hand, the exclusion would not apply to bar coverage if given the "flawed finished product" interpretation, since there was no product to evaluate.  On the other hand, the exclusion would apply and coverage would be available if it were given the "flawed process" interpretation.  The Court applied the "finished product"construction, since it was  most favorable to the insured, and reversed the District Court's denial of coverage.

This case is distinguishable from *Smith* because unlike the term "faulty workmanship," the term "faulty maintenance" cannot be divided into separate definitions for a faulty process and a faulty finished product.  Simply stated, maintenance is a process by which the value and utility of an existing product is maintained; it does not generate a new product.

This view is supported by the common definitions of maintenance, which

**Memorandum Decision and Order - 9**

include "1: the act of maintaining: the state of being maintained: support, 2: something that maintains, 3: the upkeep of property or equipment . . . ." *Merriam-Webster Online Dictionary* (visited Feb. 26, 2008).[2]   Unlike the definition of workmanship, which supports both a finished product interpretation and a process interpretation, the definition of maintenance  is not open to these two distinct interpretations.  It supports only a process interpretation, which would result in no coverage in this case.

However, even if the Court were to accept the Hamilton's premise that maintenance can be either a process or a finished product, the result is the same.  If the window cleaning provided by Mr. Kintner generated a finished product, it was a cleaned window.   Unlike the circumstances in *Smith*, that finished product could then be evaluated  to determine whether the workmanship was faulty when the damage occurred. AIC's glass expert, Henry Chamberlain, conducted such an evaluation and found that the work was faulty because Mr. Kintner damaged the windows by scraping them with a razor.  (Umland Dec., Ex. D).  This evidence is

---

[2] The Merriam-Webster dictionary also includes a fourth definition – an officious or unlawful intermeddling in a legal suit by assisting either party with means to carry it on.  This definition clearly has no application to the word maintenance as it is used in the policy in this case.

**Memorandum Decision and Order - 10**

undisputed.[3]  Thus, under either interpretation suggested by Hamilton, the exclusion would apply.

Finally, although Idaho courts have not addressed the definition of faulty maintenance, the Supreme Court of New York recently addressed an insurance policy with almost identical language as the faulty maintenance language used in the policy in this case.  In its decision, the court applied the plain and ordinary meaning of the term maintenance, which, similar to the definition above, it defined as the labor of keeping something (as buildings or equipment) in a state of repair or efficiency.  *Wider v. Heritage Maintenance, Inc.*, 827 N.Y.S.2d 837, 848 (N.Y.Sup.,2007).  The court concluded that because the insured hired a company "to clean and repair the facade of the Building, its work was certainly 'maintenance' as that term is used in the Policy" *Id.*  The same is true here.

Under the circumstances of this case, the Court finds that the term "faulty, inadequate or defective maintenance" specifically and unambiguously includes Mr. Kintner's work on the Hamiltons' windows.  Mr. Kintner maintained the windows

---

[3] The Hamiltons contend that even if the damage to the windows falls within the definition of maintenance, an issue of fact remains as to whether the maintenance was faulty or defective.  However, the Hamiltons have provided the Court with no evidence contradicting Mr. Chamberlain's conclusion that Mr. Kintner scratched the windows when he cleaned them.  To the extent the Hamiltons are suggesting that Mr. Kintner's work was not faulty or defective simply because he scratched the windows, the Court is not persuaded.  The scratches are the very defects for which the Hamiltons seek compensation, and scratching the windows was faulty or defective by definition in this case.

**Memorandum Decision and Order - 11**

when he washed them.  Moreover, Mr. Kintner's maintenance was faulty in the sense that he scratched the windows while cleaning them.  Accordingly, because the policy unambiguously excludes coverage for "faulty, inadequate or defective maintenance," the AIC policy does not cover the damage to the Hamiltons' windows.  Therefore, the Court will deny the Hamiltons' motion for summary judgment and grant AIC's motion for summary judgment.[4]

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 13) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Cross Motion for Summary Judgment (Docket No. 20) shall be, and the same is hereby, DENIED.

---

[4] Under the circumstances of this case, it also makes no difference that the windows had never been cleaned before or that the Hamiltons had not yet moved into the house when the windows were cleaned.  As noted above, the policy also states that AIC will not cover faulty, inadequate or defective "construction."

**Memorandum Decision and Order - 12**

The Court will enter a separate Judgment as required by Federal Rule of

Civil Procedure 58.



DATED:  **March 14, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 13**